# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **PHCV4 HOMES, LLC,** | ) | **Case No. 24-02751-TOM11** |
| | ) | **Chapter 11** |
| **Debtor.** | ) | |

---

## DEBTOR'S MOTION TO APPROVE SALE AND PURCHASE AGREEMENT AND FOR AUTHORITY TO SELL REAL PROPERTY OF THE ESTATE AT A PRIVATE SALE FREE AND CLEAR OF ALL LIENS AND ENCUMBRANCES

---

**COMES NOW,** PHCV4 Homes, LLC, as debtor and debtor-in-possession herein ("Debtor"), by and through undersigned counsel, pursuant to §§ 105(a) and 363 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and moves this Court to enter an order approving the contract for the sale of real property of the estate at a private sale free and clear of liens, encumbrances and other interests (the "Motion") except as otherwise stated herein. In support of this Motion, the Debtor states as follows:

### JURISDICTION AND VENUE

1.      On September 10, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Clerk of this Court. The Debtor continues to operate its business and manage its properties as a debtor-in-possession pursuant to §§ 1107(a) and 1108.

2.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of the Debtor's Chapter 11 case and this Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a) and 363(b).

3.      There is no Trustee appointed in this case.

4.      The Debtor proposes to sell all of the estate's right, title and interest in the real property described herein.

5.      The Debtor proposes to sell the estate's interest described herein free and clear of any and all mortgages, liens, interests and/or other encumbrances as set forth herein, but to the extent any lien exists, it would attach to the sale proceeds.

IF YOU CLAIM A LIEN ON OR INTEREST IN ANY OF THE PROPERTY AND IT'S NOT SET FORTH HEREIN, YOU SHOULD IMMEDIATELY MAKE SUCH LIEN OR INTEREST KNOWN TO THE DEBTOR AND THE COURT. THE PROPOSED SALES MAY AFFECT YOUR RIGHTS UNDER TITLE 11 UNITED STATES CODE SECTION 363.

6.      All liens, mortgages, or other interests shall attach to the proceeds of the sale to the extent properly allowed. The Debtor reserves the right to contest the validity, priority, extent of any such claim, lien or other interest. *See* Preliminary Title Commitment provided by Title Core, LLC (Exhibit "A").

7.      The Debtor proposes to sell its interest in certain real estate consisting of 20-single family lots ("Lots 1-20") in the subdivision known as Colonial Traditions, Phase One, in the municipality of Gulf Shores, Baldwin County, Alabama, and being more particularly described as Exhibit "B" (hereinafter the "Property") which is attached hereto and by reference made a part hereof in the presentation of the attached Sale and Purchase Agreement (the "Contract"). The Contract is attached hereto as Exhibit "B." The proposed sale will occur at an initial closing of 10 lots and, following the initial closing, at a prescribed time at a second closing of 10 lots. The proposed sale will be by private sale and the total purchase price of the Property is $100,000.00 per lot at the initial closing and $107,000.00 per lot at the second closing.

Case 24-02751-TOM11    Doc 23    Filed 10/24/24    Entered 10/24/24 13:15:57    Desc Main
Document      Page 2 of 30

Valor Communities, LLC, has entered into the Contract to purchase the above-described Property.

8.        Pursuant to § 363 of the Bankruptcy Code, the Debtor has determined that completion of this sale of the Property made the subject of the Contract would be in the best interest of the Debtor's estate and creditors.

9.        The Debtor sets forth that the total sales price for 20 lots represents the fair market value of the Property. The Purchaser has already obtained or will obtain financing and the sales are contemplated to be closed forthwith after approval from this Court. The Property consisting of Lots will be purchased as follows:

    a)      Ten (10) Lots will be purchased at an initial closing;

    b)      Six (6) months after the initial closing, but no later than December 15, 2024, Purchaser shall purchase the remaining ten (10) Lots.

10.      The Property is subject to the following liens, mortgages or other interest:

    a)      CoreVest American Finance Lender, LLC; and

    b)      B/E Engineering VB, LLC and B/E Home Services, LLC.

## **LEGAL AUTHORITY**

Section 363(b)(1) of the Bankruptcy Code provides that a debtor-in-possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor-in-possession is given these rights by § 1107(a) of the Bankruptcy Code and § 105(a) provides that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

As stated above, sound business reasons exist for liquidation of the assets identified herein. The sale of the Property represents its highest and best use and taken in conjunction with the

administration of any other assets of the Debtor, further satisfies the sound business purpose test for the sale of an asset pursuant to 11 U.S.C. Section 363 of the Bankruptcy Code.

The Debtor's sale of the assets satisfies the requirements of Section 363(f) of the Bankruptcy Code to sell the assets free and clear of all liens, claims, interests and encumbrances. Section 363(f) states:

      (f)      The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if:

            (1)      applicable non-bankruptcy law permits sale of such property free and clear of such interest;

            (2)      such entity consents;

            (3)      such interest is a lien and the price at which such property is to be sold is greater that the aggregate value of all liens on such property;

            (4)      such interest is in bona fide dispute; or

            (5)      such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

The satisfaction of any of the five requirements of Section 363(f) will suffice to permit the sale of assets free and clear of all liens. The sale proposed herein meets at least one of the 363(f) requirements.

## **RELIEF REQUESTED**

The proposed sale qualifies under Bankruptcy Code Section 363(f)(1), (2), and (3). Accordingly, the Debtor moves the Court as follows:

      A.      To order the date, time, and place of hearing on this Motion and the time within which objections may be filed and served on the Debtor, pursuant to Federal Rules of Bankruptcy Procedure 6004(c), 2002(a)(2) and 2002(c)(l);

4

B.     On such hearing, to approve the proposed sales and grant the Debtor the authority to sell and convey the Property identified herein; and to execute any instrument necessary by order of the Court, or otherwise, to effect the transfer to a purchaser, pursuant to Federal Rule of Bankruptcy Procedure 6004(f)(2);

C.     To approve the sales free and clear of all liens and interests and provide that any undisputed liens and encumbrances shall attach to the proceeds of the sale and if, on such hearing, it should appear that there are disputed liens or other parties claiming an interest in the Property to be sold, to approve and confirm the sale nevertheless, and to order the Debtor to hold the consideration paid on the date of the sale until the dispute can be resolved; and

D.     To grant such other, further and different relief as may be proper in the premises to effect the sale of the said Property.

## **NOTICE OF SALE**

Bankruptcy Rule 2002(a) and (c) requires the Debtor to notify all creditors of the proposed sale of the assets identified herein. Service of this Motion shall be provided to the creditor matrix and to all parties who have registered as a participant in the CM/ECF System for the United States Bankruptcy Court for the Northern District of Alabama pursuant to Rule 9036 of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted the 24th day of October, 2024.

*/s/ Frederick M. Garfield*
Frederick M. Garfield
Attorney for Debtor and Debtor-in-Possession

/s/ Stephen P. Leara
Stephen P. Leara, Esq.
Attorney for Debtor and Debtor-in-Possession

**OF COUNSEL:**
Spain & Gillon, LLC
The Financial Center
505 20th Street North, Suite 1200
Birmingham, AL 35023
Phone: (205) 328-4100
fgarfield@spain-gillon.com
sleara@spain-gillon.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2024, a copy of the foregoing has been electronically filed with the Clerk of Court via the CM/ECF electronic filing system and a copy served on the parties listed on the attached matrix by CM/ECF electronic filing system including:

Jon A. Dudeck,
Asst. Bankruptcy Administrator
1800 5th Avenue North
Birmingham, AL 35203

Daniel D. Sparks, Esq.
Christian & Small, LLP
505 20th Street North, Suite 1800
Birmingham, AL 35203

Scott D. Stevens, Esq.
Starnes Davis Florie LLP
11 N. Water Street, Suite 20290
Mobile, AL 36602

Bryan E. Bates, Esq.
352 Church Street
Marietta, GA 30060

/s/ Frederick M. Garfield
Of Counsel

6

Label Matrix for local noticing
1126-2
Case 24-02751-TOM11
NORTHERN DISTRICT OF ALABAMA
Birmingham
Thu Oct 24 11:51:28 CDT 2024

PHCV4 Homes, LLC
3000 Riverchase Galleria
Suite 1770
Birmingham, AL 35244-2613

B/E Engineering VB, LLC
c/o Starnes Davis Florie LLP
11 N. Water St.
Ste. 20290
Mobile, AL 36602-5020

U. S. Bankruptcy Court
Robert S. Vance Federal Building
1800 5th Avenue North
Birmingham, AL 35203-2111

B/E Home Services, LLC
c/o Starnes Davis Florie LLP
11 N. Water St.
Ste. 20290
Mobile, AL 36602-5020

Acme Brick Company
P.O. Box 731842
Dallas, TX 75373-1842

Acme Brick Company
c/o Michael Kelly, Esq.
137 Main Street, Suite 202
Trussville, AL 35173-1462

B/E Engineering
3233 Executive Park Circle
Mobile, AL 36606-2844

B/E Engineering VB, LLC
c/o Scott Stevens, Esq.
11 N. Water Street, Ste. 20290
Mobile, AL 36602-5020

Bankruptcy Administrator
Robert S. Vance Federal Building
1800 Fifth Avenue North
Birmingham, AL 35203-2111

Builders First Source
P.O. Box 402616
Atlanta, GA 30384-2616

Builders First Source
c/o Michael Kelley, Esq.
137 Main Street, Suite 202
Trussville, AL 35173-1462

Corevest American Finance Lender, LLC
ATTN: Loan Administrator
4 Park Plaza, Suite 900
Irvine, CA 92614-2551

Corevest American Finance Lender, LLC
Rubin Lublin, LLC
3145 Avalon Ridge Place, Ste 100
Peachtree Corners, GA 30071-1570

Department of Labor
649 Monroe St
Montgomery AL 36131-0099

Department of Revenue
Jefferson County Courthouse
Birmingham AL 35203

Interior Exterior Building Supply
P.O. Box 4002
New Orleans, LA 70178-4002

Interior Exterior Building Supply
c/o Michael Kelly, Esq.
137 Main Street, Suite 202
Trussville, AL 35173-1462

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101-7346

Prominence Homes, LLC
3000 Riverchase Galleria
Suite 1770
Birmingham, AL 35244-2613

Ready Mix USA
2567 Ruffner Road
Birmingham, AL 35210-3935

Ready Mix USA
c/o John R. Frawley, Jr., Esq.
P.O. Box 101493
Birmingham, AL 35210-6493

Secretary of the Treasury
1500 Pennsylvania Ave., NW
Washington, DC 20220-0001

(p)STATE OF ALABAMA DEPARTMENT OF REVENUE
P O BOX 320001
MONTGOMERY AL 36132-0001

U.S. Securities and Exchange Commission
Regional Director, Branch of Reorganizat
Atlanta Regional Office, Suite 900
950 East Paces Ferry Road
Atlanta, GA 30326-1180

United States Attorney
Northern District of Alabama
1801 Fourth Avenue North
Birmingham, AL 35203-2101

United States Bankruptcy Administrator
Northern District of Alabama
1800 Fifth Avenue North
Birmingham, AL 35203-2111

Frederick Mott Garfield
Spain & Gillon, LLC
505 North 20th Street
1200 Financial Center
Birmingham, AL 35203-4610

Jon A Dudeck
Bankruptcy Administrator-Bham Office
1800 5th Ave N Rm 132
Birmingham, AL 35203-2126

Rachel L. Webber
Tuscaloosa BA Office
2005 University Blvd.
Room 1300
Tuscaloosa, AL 35401-1526

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

State of Alabama Dept of Revenue
P O Box 320001
Montgomery AL 36132

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)CoreVest American Finance Lender LLC

End of Label Matrix
Mailable recipients    29
Bypassed recipients     1
Total                  30

# EXHIBIT A



**ALTA COMMITMENT FOR TITLE INSURANCE**
**issued by**
**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**

**NOTICE**

**IMPORTANT – READ CAREFULLY:** THIS COMMITMENT IS AN OFFER TO ISSUE ONE OR MORE TITLE INSURANCE POLICIES. ALL CLAIMS OR REMEDIES SOUGHT AGAINST THE COMPANY INVOLVING THE CONTENT OF THIS COMMITMENT OR THE POLICY MUST BE BASED SOLELY IN CONTRACT.

THIS COMMITMENT IS NOT AN ABSTRACT OF TITLE, REPORT OF THE CONDITION OF TITLE, LEGAL OPINION, OPINION OF TITLE, OR OTHER REPRESENTATION OF THE STATUS OF TITLE. THE PROCEDURES USED BY THE COMPANY TO DETERMINE INSURABILITY OF THE TITLE, INCLUDING ANY SEARCH AND EXAMINATION, ARE PROPRIETARY TO THE COMPANY, WERE PERFORMED SOLELY FOR THE BENEFIT OF THE COMPANY, AND CREATE NO EXTRACONTRACTUAL LIABILITY TO ANY PERSON, INCLUDING A PROPOSED INSURED.

THE COMPANY'S OBLIGATION UNDER THIS COMMITMENT IS TO ISSUE A POLICY TO A PROPOSED INSURED IDENTIFIED IN SCHEDULE A IN ACCORDANCE WITH THE TERMS AND PROVISIONS OF THIS COMMITMENT. THE COMPANY HAS NO LIABILITY OR OBLIGATION INVOLVING THE CONTENT OF THIS COMMITMENT TO ANY OTHER PERSON.

**COMMITMENT TO ISSUE POLICY**

Subject to the Notice; Schedule B, Part I – Requirements; Schedule B, Part II – Exceptions; and the Commitment Conditions, Old Republic National Title Insurance Company, a(n) Florida corporation (the "Company"), commits to issue the Policy according to the terms and provisions of this Commitment. This Commitment is effective as of the Commitment Date shown in Schedule A for each Policy described in Schedule A, only when the Company has entered in Schedule A both the specified dollar amount as the Proposed Amount of Insurance and the name of the Proposed Insured.

If all of the Schedule B, Part I – Requirements have not been met within 180 days after the Commitment Date, this Commitment terminates and the Company's liability and obligation end.

**COMMITMENT CONDITIONS**

1.    DEFINITIONS
    a.    "Discriminatory Covenant": Any covenant, condition, restriction, or limitation that is unenforceable under applicable law because it illegally discriminates against a class of individuals based on personal characteristics such as race, color, religion, sex, sexual orientation, gender identity, familial status, disability, national origin, or other legally protected class.
    b.    "Knowledge" or "Known": Actual knowledge or actual notice, but not constructive notice imparted by the Public Records.
    c.    "Land": The land described in Item 5 of Schedule A and improvements located on that land that by State law constitute real property. The term "Land" does not include any property beyond that described in Schedule A, nor any right, title, interest, estate, or easement in any abutting street, road, avenue, alley, lane, right-of-way, body of water, or waterway, but does not modify or limit the extent that a right of access to and from the Land is to be insured by the Policy.
    d.    "Mortgage": A mortgage, deed of trust, trust deed, security deed, or other real property security instrument, including one evidenced by electronic means authorized by law.
    e.    "Policy": Each contract of title insurance, in a form adopted by the American Land Title Association, issued or to be issued by the Company pursuant to this Commitment.
    f.    "Proposed Amount of Insurance": Each dollar amount specified in Schedule A as the Proposed Amount of Insurance of each Policy to be issued pursuant to this Commitment.
    g.    "Proposed Insured": Each person identified in Schedule A as the Proposed Insured of each Policy to be issued pursuant to this Commitment.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

h.  "Public Records": The recording or filing system established under State statutes in effect at the Commitment Date under which a document must be recorded or filed to impart constructive notice of matters relating to the Title to a purchaser for value without Knowledge. The term "Public Records" does not include any other recording or filing system, including any pertaining to environmental remediation or protection, planning, permitting, zoning, licensing, building, health, public safety, or national security matters.

i.  "State": The state or commonwealth of the United States within whose exterior boundaries the Land is located. The term "State" also includes the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, and Guam.

j.  "Title": The estate or interest in the Land identified in Item 3 of Schedule A.

2.  If all of the Schedule B, Part I – Requirements have not been met within the time period specified in the Commitment to Issue Policy, this Commitment terminates and the Company's liability and obligation end.

3.  The Company's liability and obligation is limited by and this Commitment is not valid without:
    a.  the Notice;
    b.  the Commitment to Issue Policy;
    c.  the Commitment Conditions;
    d.  Schedule A;
    e.  Schedule B, Part I – Requirements;
    f.  Schedule B, Part II – Exceptions; and
    g.  a counter-signature by the Company or its issuing agent that may be in electronic form.

4.  COMPANY'S RIGHT TO AMEND
    The Company may amend this Commitment at any time. If the Company amends this Commitment to add a defect, lien, encumbrance, adverse claim, or other matter recorded in the Public Records prior to the Commitment Date, any liability of the Company is limited by Commitment Condition 5. The Company is not liable for any other amendment to this Commitment.

5.  LIMITATIONS OF LIABILITY
    a.  The Company's liability under Commitment Condition 4 is limited to the Proposed Insured's actual expense incurred in the interval between the Company's delivery to the Proposed Insured of the Commitment and the delivery of the amended Commitment, resulting from the Proposed Insured's good faith reliance to:
        i.  comply with the Schedule B, Part I – Requirements;
        ii.  eliminate, with the Company's written consent, any Schedule B, Part II – Exceptions; or
        iii.  acquire the Title or create the Mortgage covered by this Commitment.
    b.  The Company is not liable under Commitment Condition 5.a. if the Proposed Insured requested the amendment or had Knowledge of the matter and did not notify the Company about it in writing.
    c.  The Company is only liable under Commitment Condition 4 if the Proposed Insured would not have incurred the expense had the Commitment included the added matter when the Commitment was first delivered to the Proposed Insured.
    d.  The Company's liability does not exceed the lesser of the Proposed Insured's actual expense incurred in good faith and described in Commitment Condition 5.a. or the Proposed Amount of Insurance.
    e.  The Company is not liable for the content of the Transaction Identification Data, if any.
    f.  The Company is not obligated to issue the Policy referred to in this Commitment unless all of the Schedule B, Part I – Requirements have been met to the satisfaction of the Company.
    g.  The Company's liability is further limited by the terms and provisions of the Policy to be issued to the Proposed Insured.

6.  LIABILITY OF THE COMPANY MUST BE BASED ON THIS COMMITMENT; CHOICE OF LAW AND CHOICE OF FORUM
    a.  Only a Proposed Insured identified in Schedule A, and no other person, may make a claim under this Commitment.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

    b.    Any claim must be based in contract under the State law of the State where the Land is located and is restricted to the terms and provisions of this Commitment. Any litigation or other proceeding brought by the Proposed Insured against the Company must be filed only in a State or federal court having jurisdiction.

    c.    This Commitment, as last revised, is the exclusive and entire agreement between the parties with respect to the subject matter of this Commitment and supersedes all prior commitment negotiations, representations, and proposals of any kind, whether written or oral, express or implied, relating to the subject matter of this Commitment.

    d.    The deletion or modification of any Schedule B, Part II – Exception does not constitute an agreement or obligation to provide coverage beyond the terms and provisions of this Commitment or the Policy.

    e.    Any amendment or endorsement to this Commitment must be in writing and authenticated by a person authorized by the Company.

    f.    When the Policy is issued, all liability and obligation under this Commitment will end and the Company's only liability will be under the Policy.

**7.**    **IF THIS COMMITMENT IS ISSUED BY AN ISSUING AGENT**
The issuing agent is the Company's agent only for the limited purpose of issuing title insurance commitments and policies. The issuing agent is not the Company's agent for closing, settlement, escrow, or any other purpose.

**8.**    **PRO-FORMA POLICY**
The Company may provide, at the request of a Proposed Insured, a pro-forma policy illustrating the coverage that the Company may provide. A pro-forma policy neither reflects the status of Title at the time that the pro-forma policy is delivered to a Proposed Insured, nor is it a commitment to insure.

**9.**    **CLAIMS PROCEDURES**
This Commitment incorporates by reference all Conditions for making a claim in the Policy to be issued to the Proposed Insured. Commitment Condition 9 does not modify the limitations of liability in Commitment Conditions 5 and 6.

**10.**    **CLASS ACTION**
ALL CLAIMS AND DISPUTES ARISING OUT OF OR RELATING TO THIS COMMITMENT, INCLUDING ANY SERVICE OR OTHER MATTER IN CONNECTION WITH ISSUING THIS COMMITMENT, ANY BREACH OF A COMMITMENT PROVISION, OR ANY OTHER CLAIM OR DISPUTE ARISING OUT OF OR RELATING TO THE TRANSACTION GIVING RISE TO THIS COMMITMENT, MUST BE BROUGHT IN AN INDIVIDUAL CAPACITY. NO PARTY MAY SERVE AS PLAINTIFF, CLASS MEMBER, OR PARTICIPANT IN ANY CLASS OR REPRESENTATIVE PROCEEDING. ANY POLICY ISSUED PURSUANT TO THIS COMMITMENT WILL CONTAIN A CLASS ACTION CONDITION.

**11.**    **ARBITRATION**
The Policy contains an arbitration clause. All arbitrable matters when the Proposed Amount of Insurance is $2,000,000 or less may be arbitrated at the election of either the Company or the Proposed Insured as the exclusive remedy of the parties. A Proposed Insured may review a copy of the arbitration rules at http://www.alta.org/arbitration.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



Page 3 of 14

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
1408 North Westshore Blvd, Suite 900, Tampa, FL 33607

By: _____
    President

By: _____
    Secretary

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.



**Transaction Identification Data, for which the Company assumes no liability as set forth in Commitment Condition 5.e.:**

Issuing Agent: TitleCore, LLC
Issuing Office: 3000 Riverchase Galleria, Ste 1730
                 Hoover, AL 35244
Issuing Office's ALTA® Registry ID: 1219250
Loan ID Number: TBD
Commitment Number: TC-24-292
Issuing Office File Number: TC-24-292
Property Address: Colonial Traditions - Lots 1-20, Gulf Shores, AL 36542
Revision Number:

## SCHEDULE A

1. Commitment Date: October 18, 2024 8:00 AM
2. Policy to be issued:
   (a) 2021 ALTA Owner's Policy
        Proposed Insured:                   **Valor Communities, LLC, a Limited Liability Company**
        Proposed Amount of Insurance:     **$TBD**
        The estate or interest to be insured:    **fee simple**
   (b) 2021 ALTA Loan Policy
        Proposed Insured:                   **TBD**
        Proposed Amount of Insurance:     **$TBD**
        The estate or interest to be insured:    **fee simple**
3. The estate or interest in the Land at the Commitment Date is:
   fee simple
4. The Title is, at the Commitment Date, vested in**:**
   PHCV4 Homes, LLC, a Delaware Limited Liability Company by deed from Dilworth Development, Inc. an Alabama Corporation dated 06/27/2023 and recorded with Probate Office of Baldwin County on 07/11/2023 as Instrument #2073473.
5. The land is described as follows:
   The land is described as set forth in Exhibit A attached hereto and made a part hereof.

**TITLECORE, LLC**
3000 Riverchase Galleria, Ste 1730, Hoover, AL 35244
Telephone: (205) 900-7070

Countersigned by:

_____
Kellie M. Dyar, License #3000513731
TitleCore, LLC, License #3001934157

**OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY**
1408 North Westshore Blvd, Suite 900, Tampa, FL 33607

*C Monroe*
By:_____
     President

*David Wold*
By:_____
     Secretary

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



## SCHEDULE B, PART I – Requirements

All of the following Requirements must be met:

1. The Proposed Insured must notify the Company in writing of the name of any party not referred to in this Commitment who will obtain an interest in the land or who will make a loan on the Land. The Company may then make additional Requirements or Exceptions.

2. Pay the agreed amount for the estate or interest to be insured.

3. Pay the premiums, fees, and charges for the Policy to the Company.

4. Documents satisfactory to the Company that convey the Title or create the Mortgage to be insured, or both, must be properly authorized, executed, delivered, and recorded in the Public Records.

    a. Duly authorized and executed Deed from **PHCV4 Homes, LLC, a Delaware Limited Liability Company**, to **Valor Communities, LLC**, to be executed and recorded at closing.

    b. Duly authorized and executed Mortgage from **Valor Communities, LLC** to **TBD** securing its loan in the amount of **$TBD**, to be filed for record in the Probate Office of Baldwin County, Alabama.

5. Furnish satisfactory evidence that there are no outstanding mechanics' or materialmen's liens against the property. Examine parties carefully and attach owners' and contractors' affidavits where there has been construction during the statutory period for liens.

6. Payment of all taxes, charges, assessments, levied and assessed against subject property, which are due and payable.

7. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.013. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 1)**

8. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.014. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 2)**

9. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.015. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 3)**

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

10. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.016. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 4)**

11. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.017. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 5)**

12. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.018. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 6)**

13. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.019. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 7)**

14. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.020. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 8)**

15. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.021. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 9)**

16. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.022. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 10)**

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

17. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.023. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 11)**

18. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.024. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 12)**

19. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.025. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 13)**

20. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.026. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 14)**

21. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.027. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 15)**

22. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.028. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 16)**

23. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.029. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 17)**

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

24. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.030. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 18)**

25. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.031. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 19)**

26. Taxes are DUE, but not yet delinquent for the year 2024 in the amount of $834.90. Parcel ID No. 61-09-29-4-001-002.032. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustments that may be made by either the Tax Assessor or the Board of Equalization of Baldwin County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes. **(Lot 20)**

27. We require proof and an affidavit and indemnity from the person(s) vested in title herein, that there are no municipal charges, fire district dues, homeowner's association dues, other assessments and/or sewer charges whether public and/or private, outstanding or currently due on the property herein described.

28. Payment and release of subject property from that Construction Mortgage from PHCV4 Homes, LLC, a Delaware Limited Liability Company to Corevest American Finance Lender LLC in the amount of $80,000,000.00, dated June 27, 2023, and recorded July 11, 2023, in Instrument No. 2073474. NOTE: the maximum liability on this mortgage is $6,981,000.00.

    Assignment of Security Instrument recorded October 2, 2023, in the Probate Office of Baldwin County, Alabama, in Instrument No. 208900.

    Assignment of Security Instrument recorded October 2, 2023, in the Probate Office of Baldwin County, Alabama, in Instrument No. 2089001.

    Notice to Closing AGENT: If you are closing based on an Equity Line Mortgage Pay-Off Letter, you must determine that the account is closed, and no further advances will be made. You must have a release in hand or adequate assurances that the release is immediately forthcoming. We will require a copy of the release or your assurance that the release is forthcoming.

29. Payment and satisfaction of that Judgment Lien Case No. CV-2024-900239.00, dated June 17, 2024, recorded in the Probate Office of Baldwin County, Alabama, in Instrument No. 2132319, in the amount of $46,672.51 plus interest and fees, from B/E Engineering VB, LLC and B/E Home Services, LLC versus Prominence Homes, LLC and PHCV4 Homes LLC. Attorney: Scott David Stevens.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

30. PHCV4 Homes LLC, is the same entity as PHCV4 Homes LLC, who filed a Petition in Bankruptcy Court under Chapter 11 of the Bankruptcy Code, said petition being dated September 10, 2024, under Case No. 24-02751-TOM11, and according to the Bankruptcy Court's records, the Debtor's Tax ID No. is 92-3314073. We must be provided with an order from the Bankruptcy Court approving the Sale as set out above. Said order should contain certification that all creditors have been given notice of said order and we must be provided with certification that the time of appeal of that order has run and no appeals were filed during that period. Based on this information, we will make any further requirements necessary.

31. As to PHCV4 Homes, LLC, a Delaware Limited Liability Company, we require the following: A copy of the Company Agreement, together with an affidavit that the agreement so furnished represents the current agreement of the LLC, and that there have been no other changes, written, oral or implied. We reserve the right to make additional requirements and/or exceptions based on our review of same.

32. As to Valor Communities, LLC, a Limited Liability Company, we require the following: A copy of the Company Agreement, together with an affidavit that the agreement so furnished represents the current agreement of the LLC, and that there have been no other changes, written, oral or implied. We reserve the right to make additional requirements and/or exceptions based on our review of same.

33. We require the attached Notice of Availability of Closing or Settlement Protection to be properly completed by the buyer and seller and returned to our office.

34. Pursuant to Code of Alabama (1975), Section 40-22-1, the sales price, Grantor's address, Grantee's address and property address must be stated in the Deed; or in the alternative, a properly executed and attested Real Estate Sales Validation Form may be submitted to the Judge of Probate with the Deed of conveyance and recorded as a part thereof, if required.

35. NOTE: All papers are to be filed in the Probate Office of Baldwin County, Alabama.

**24 Month chain of title shown below (this is provided for informational purposes only):**
PHCV4 Homes LLC by statutory warranty deed recorded July 11, 2023, in the Probate Office of Baldwin County, Alabama in Instrument No. 2073473.

Dilworth Development, Inc. by statutory warranty deed recorded January 5, 2022, in the Probate Office of Baldwin County, Alabama, in Instrument No. 1969174.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



## SCHEDULE B, PART II – Exceptions

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This Commitment and the Policy treat any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document will be excepted from coverage.**

The Policy will not insure against loss or damage resulting from the terms and conditions of any lease or easement identified in Schedule A, and will include the following Exceptions unless cleared to the satisfaction of the Company:

1. Any defect, lien, encumbrance, adverse claim, or other matter that appears for the first time in the Public Records or is created, attached, or is disclosed between the Commitment Date and the date on which all of the Schedule B, Part I — Requirements are met.

2. Those taxes and special assessments, which become due and payable subsequent to Date of Policy.

3. No coverage is afforded for any reappraisal, assessed value adjustment, current use adjustment, roll-back and/or escape taxes which may become due by the virtue of any action of the Office of the Revenue Commissioner which has jurisdiction over the property described in Schedule A.

4. Minerals of whatsoever kind, subsurface and surface substances, including but not limited to coal, lignite, oil, gas, uranium, clay, rock, sand and gravel in, on, under and that may be produced from the Land, together with all rights, privileges, and immunities relating thereto, whether or not appearing in the Public Records or listed in Schedule B. The Company makes no representation as to the present ownership of any such interests. There may be leases, grants, exceptions or reservations of interests that are not listed.

5. Any lien, or right to a lien, for services, labor or materials in connection with improvements, repairs or renovations provided before, on or after Date of Policy, not shown by the Public Records.

6. Any facts, rights, interests, or claims that are not shown in the Public Records, but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

7. Any easement, encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land or that could be ascertained by an inspection of the Land.

8. Easements or other uses of subject property not visible from the surface, or easements or claims of easements, not shown by the Public Records.

9. Building setback lines, easements and other matters set forth on recorded plat of said subdivision, as applicable.

10. Rights or claims of parties in possession not shown by the Public Records.

11. Building set back line(s), Easement(s), and other matters as set forth on Plat of Subdivision as recorded in Slides 2284-A & B, amended in Slides 2298-B & C, ratified in Instrument Number 1032930, re-recorded in Slides 2352-E & F and Slides 2382-D & E, ratified in Instrument Number 1150494.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



American Land Title Association

Commitment for Title Insurance
2021 v. 01.00 (07-01-2021)

12. Covenants, conditions, and restrictions as set forth in instrument recorded Slides 2284-A & B, amended in Slides 2298-B & C, ratified in Instrument Number 1032930, re-recorded in Slides 2352-E & F and Slides 2382-D & E, but omitting any Covenant, Condition or Restriction, if any, based on race, color, religion, sex, handicap, familial status, or national origin unless and only to the extent that the Covenant, Condition or Restriction (a) is exempt under Title 42 of the United States Code, or (b) relates to handicap, but does not discriminate against handicapped persons.

13. Reservation of interest in and to all oil, gas and minerals, and rights in connection therewith, as contained in instrument recorded in Real Property Book 103, Page 1879; Real Property Book 115, Page 1856; and Real Property Book 113, Page 404.

14. Easement(s) granted Baldwin County EMC by instrument(s) recorded in Deed Book 285, Page 381.

15. Right of Way Agreement to Bay City Minerals, Inc. recorded in Real Property Book 131, Page 259.

16. Easement Granted Alabama Electric Cooperative, Inc. by instrument recorded in Real Property Book 168, Page 1863.

17. Reservation of Non-Exclusive Permanent Easement by Brights Creek Development Company, LLC recorded in Real Property Book 736, Page 36.

18. Easement between Colonial Properties Services, Inc. and Utilities Board of the City of Gulf Shores dated August 8, 2007, and recorded September 14, 2007, in Instrument No. 1074492, aforesaid records.

19. Restrictions set forth in Special Warranty Deed from Brights Creek Development Company, L.L.C. to Colonial Properties Services, Inc., dated September 14, 2005 and recorded in Instrument No. 922699, aforesaid records.

20. Electric Line – Right of Way Easement between Colonial Properties (Grantor) and Baldwin County Electric Membership Corporation, a Rural Electric Cooperative (Grantee) dated July 30, 2007, and recorded April 18, 2008, in Instrument No. 1111363, aforesaid records.

21. Declaration of Covenants, Conditions and Restrictions recorded April 14, 2023, in the Probate Office, in and for Baldwin County, Alabama in Instrument No. 2057838.

22. Such state of facts as set out on recorded plat of Colonial Traditions, Phase 1, a Resubdivision of Lot 6, Colonial Traditions, including but not limited to easements, building lines, restrictions and notes and any other matters, as recorded in Slide 2887-A through 2887-C, in the Probate Office in and for Baldwin County, Alabama.

23. 15 foot setback line along the front side of the Land as shown on or described in the plat of Colonial Traditions, Phase 1, a Resubdivision of Lot 6, Colonial Traditions, as recorded in Slide 2887-A through 2887-C , in the Probate Office in and for Baldwin County, Alabama.

24. 5.5 foot setback line along the side of the Land as shown on or described in the plat of Colonial Traditions, Phase 1, a Resubdivision of Lot 6, Colonial Traditions, as recorded in Slide 2887-A through 2887-C, in the Probate Office in and for Baldwin County, Alabama.

25. 5 foot setback line along the rear side of the Land as shown on or described in the plat of Colonial Traditions, Phase 1, a Resubdivision of Lot 6, Colonial Traditions, as recorded in Slide 2887-A through 2887-C, in the Probate Office in and for Baldwin County, Alabama.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



Page 12 of 14

Case 24-02751-TOM11    Doc 23    Filed 10/24/24    Entered 10/24/24 13:15:57    Desc Main
Document      Page 21 of 30

26. 15 foot Drainage and Utility Easement along all right of ways as shown on or described in the plat of Colonial Traditions, Phase 1, a Resubdivision of Lot 6, Colonial Traditions, as recorded in Slide 2887-A through 2887-C, in the Probate Office in and for Baldwin County, Alabama.

27. 5 foot Drainage and Utility Easement along side and rear lot lines as shown on or described in the plat of Colonial Traditions, Phase 1, a Resubdivision of Lot 6, Colonial Traditions, as recorded in Slide 2887-A through 2887-C, in the Probate Office in and for Baldwin County, Alabama.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2021 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.



## EXHIBIT "A"

The Land referred to herein below is situated in the County of Baldwin, State of Alabama and is described as follows:

Lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20 according to the Subdivision Plat of Colonial Traditions, Phase 1, as recorded in Slide 0002887-A through Slide 0002887-C, in the Probate Office of Baldwin County, Alabama.

FOR INFORMATIONAL PURPOSES ONLY:
Lot 1 - 6110 Frigate Lane, Gulf Shores, AL 36542; Lot 2 - 6114 Frigate Lane, Gulf Shores, AL 36542; Lot 3 - 6122 Frigate Lane, Gulf Shores, AL 36542; Lot 4 - 6126 Frigate Lane, Gulf Shores, AL 36542; Lot 5 - 6130 Frigate Lane, Gulf Shores, AL 36542; Lot 6 - 6138 Frigate Lane, Gulf Shores, AL 36542; Lot 7 - 6142 Frigate Lane, Gulf Shores, AL 36542; Lot 8 - 6146 Frigate Lane, Gulf Shores, AL 36542; Lot 9 - 6150 Frigate Lane, Gulf Shores, AL 36542; Lot 10 - 6154 Frigate Lane, Gulf Shores, AL 36542; Lot 11 - 6158 Frigate Lane, Gulf Shores, AL 36542; Lot 12 - 6162 Frigate Lane, Gulf Shores, AL 36542; Lot 13 - 6166 Frigate Lane, Gulf Shores, AL 36542; Lot 14 - 6170 Frigate Lane, Gulf Shores, AL 36542; Lot 15 - 6176 Frigate Lane, Gulf Shores, AL 36542; Lot 16 - 6180 Galleon Lane, Gulf Shores, AL 36542; Lot 17 - 6186 Galleon Lane, Gulf Shores, AL 36542; Lot 18 - 6190 Galleon Lane, Gulf Shores, AL 36542; Lot 19 - 6194 Galleon Lane, Gulf Shores, AL 36542; Lot 20 - 6198 Galleon Lane, Gulf Shores, AL 36542.

*This page is only a part of a 2021 ALTA Commitment for Title Insurance issued by Old Republic National Title Insurance Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I – Requirements; and Schedule B, Part II – Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2021 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

AMERICAN
LAND TITLE
ASSOCIATION

# EXHIBIT B

SALE AND PURCHASE AGREEMENT

This Agreement, made and entered into this date: by and between PHCV4 Homes, LLC, hereafter known as Seller, and Valor Communities, LLC hereafter known as the Purchaser.

WITNESS TO:

Whereas, Seller is desirous of selling and purchaser is desirous of purchasing a certain property, the parties hereto enter into this Agreement as set forth herein below.

FOR AND IN CONSIDERATION of the sum of Twenty Thousand Dollars ($20,000.00) (hereinafter referred to as 'Earnest Money') to be issued within 5 business days of acceptance date as stated which shall be credited upon the closing. Said Earnest Money shall be fully refundable if the provisions set forth hereafter are not found satisfactory to Buyer during the Inspection Period and shall be held in escrow at the offices of South Oak Title.

**1. PURCHASE AND SALE:** Seller agrees to sell and Purchaser agrees to buy in the manner set forth hereinafter certain real estate consisting of 20-single family lots (lots 1-20) in the subdivision known as Colonial Traditions, Phase 1 in the Municipality of Gulf Shores, Baldwin County, Alabama and being more particularly described as Exhibit 'A' which is attached hereto and by reference made a part hereof (hereinafter the 'property').

**2. PURCHASE PRICE:** The Purchase Price shall be One Hundred Thousand ($100,000.00) dollars per lot at the Initial Closing (hereinafter defined) and One Hundred Seven Thousand ($107,000.00) dollars per lot at the Second Closing (hereinafter defined).

**3. TAKEDOWN SCHEDULE:** The lots will be purchased as follows: 10 lots will be purchased at the Initial Closing. Six months after the Initial Closing, but no later than December 15, 2024, Purchaser shall purchase the remaining 10 lots.

**4. TITLE CONVEYANCE:** Seller agrees to provide and furnish purchaser, at the time of closing, good and marketable title including a full title insurance policy to property except for taxes for the current year if they are not yet due and payable. In the event Seller cannot provide good and marketable title to property in accordance with the preceding sentence, Purchaser shall give Seller notice of the specific defects which exist in the title to property prior to closing date and Seller agrees to exercise reasonable diligence to clear any such valid defects specified by purchaser prior to closing. In the event Seller cannot clear such defects specified by Purchaser, Purchaser shall have the election of (1) waiving the defects which have been specified and closing the transaction in accordance with the terms of the agreement, or (2) declaring this agreement to be null and void and receiving a complete refund of all Earnest Money paid herein, in which event there shall be no further duties, obligations or rights between the parties herein. If Purchaser chooses to close said property and clear up any title defects and close on lots or property, Seller shall credit any out-of-pocket costs paid by the Purchaser to clear such defects on the next Closing. Marketable title as used herein shall mean title which a title insurance company licensed to do business in the state of Alabama will insure at its regular rates, subject

1

only to standard exceptions.

**5. PRORATION OF TAXES:** Real Estate property taxes for the year shall be prorated as to the date of closing.   In the event the current year's taxes are not available at the time of closing, the proration shall be based on the previous year's tax, until the actual bill is available, at which time proration shall be adjusted based on actual bill.

**6. WARRANTY DEED AND OWNER'S AFFIDAVIT:** Seller warrants that it has title to said property and agrees to convey title at closing by Statutory Warranty Deed. Seller agrees to execute an owner's affidavit stating that said property is free and clear of all claims, suits, debts, liens, or judgments, except State and county taxes.

**7. NOTICE:** Whenever any notice, demand or request is required or permitted herein, such notice, demand or request shall be hand delivered in person or sent by United States Mail, registered or certified, postage paid, to the parties

Any notice, demand or request which shall be served upon either party shall be deemed sufficiently given for all purposes herein: (1) at the time such notices, demands, or requests are delivered in person, or (2) on the fifth (5th) business day after the mailing of such notices, demands or requests in accordance with the preceding portion of this paragraph, or (3) via electronic mail with confirmed receipt.

**8. BREACH OF CONTRACT:** In the event the purchase described herein above is not consummated because of a breach by the Purchaser of any of the terms and conditions herein set forth, said Earnest Money shall be forfeited to Seller and Seller shall receive said Earnest Money as full liquidated damages as permitted for breach of this Agreement and the balance of this Agreement shall be null and void and neither party shall have further recourse against the other. In the event the closing specified herein above is not consummated by a breach by the Seller of any of the terms herein Buyer shall have the right to either bring an action against Seller herein for Specific Performance of the Agreement or terminate this Agreement and receive a refund of the Earnest Money as its sole remedy.  Upon termination of this Agreement, neither party shall have any liability to the other party hereunder except the successful party in any litigation for the enforcement of this provision shall be entitled to reimbursement of any and all legal fees incurred.

**9. RIGHT TO CURE:** Prior to any legal actions by either party against the other, the party alleging the Default of the other Party shall provide an opportunity and Right to Cure the issue believed to constitute a Default. This Right To Cure period shall be Thirty Days from the Notice of such Default.

**10. DUE DILIGENCE:**  Purchaser shall have 30 days after Seller's signature of the Purchase and Sale Agreement to perform due diligence period with respect to the Property. Seller shall supply Purchaser with all relevant governing documents related to such Property including any preliminary plat approvals and any other governing documents, as well as any construction drawings completed to-date. During the Due Diligence Period, Purchaser shall make such investigations and inquiries as Purchaser may, in its sole discretion deem necessary to determine

2

if the property is suitable for development of a residential subdivision in accordance with the Plat Maps, including without limitation review of flood permit requirements, HOA approvals, standard soil tests, municipal building permit requirements, plat zoning and or zoning restrictions, phase one environmental study and. utility availability letters (including water sanitary sewer, and electrical services). In the event Purchaser determines that additional time is required to determine the feasibility of development of the Property, Purchaser may request that Seller extend the Due Diligence period for a period not to exceed thirty (30) days. Any extension shall be in writing and signed by all parties. If during the Due Diligence period, Purchaser determines in its sole discretion the property is unsatisfactory for development in accordance with Purchaser's intended use, Purchaser may elect to terminate this Agreement by delivery of written notice in which event this Agreement shall terminate and Seller shall return all earnest money to Purchaser, and neither party shall have any further rights or obligations hereunder.

For so long as this Agreement is in effect, Purchaser, its agents, representatives, surveyors, engineers and others, upon the direct or indirect employment or appointment of Purchaser, shall have the right and privilege of going on the Property to inspect, examine, survey and otherwise do whatever Purchaser deems necessary to plan for the development of said Property. Purchaser shall have the right to, make soil tests, borings, percolation tests, environmental surveys, geological surveys, and perform such other tests as are necessary to obtain information to determine the surface, subsurface and topographic conditions of said property; provided that Purchaser shall not conduct a Phase 2 environmental survey without the prior consent of Seller. Purchaser agrees to indemnify and hold Seller harmless from any mechanics liens which might be filed against said property by reason of performance of any such acts and to restore said property to its condition prior to such acts of Purchaser. The cost of such inspections and restorations will be borne solely by the Purchaser.

**11. ASSIGNMENT:** Purchaser shall have the right to assign all or part of his interest in this Agreement to one or more additional parties.

**12. AMENDMENTS:** No amendments to this Agreement shall be binding on any of the parties to this Agreement unless such amendment is in writing and is executed by all parties with the same formality as this Agreement is executed.

**13. CLOSING CONDITIONS:** If the following stipulations conflict with or repeat any conditions set forth in any part of this agreement, the conditions set forth in this, Stipulation 13, shall control.

    A. Purchaser, in its sole discretion, must determine that the condition of the property is satisfactory as it pertains to flood permit requirements, HOA approvals, standard soil tests, municipal building permit requirements and the like.

    B. Satisfactory plat must be in place and recorded in accordance with applicable zoning.

    C. Lots must be padded for slab-on-grade construction with suitable compaction tests provided to the Purchaser, supplied with working water service, storm sewer, retention and working electricity stubbed to each lot.

    D. All engineering holds or requirements placed on the Developer/ Seller by all governing authority shall be removed

E. Appropriate Zoning Requirements are fully satisfied

F. Lots must be supplied with operable water and sanitary sewer laterals, and all water and sanitary sewer approvals must be obtained and provided to the Purchaser. Seller agrees to provide a list of utility providers to the Purchaser so that the Purchaser can verify that all developer utility fees have been paid simultaneously with or prior to the final plat approval by the municipality.

G. Proof that public maintenance of the roads has been accepted by the governing jurisdiction, except for the alleyways depicted on Exhibit C. The perpetual maintenance of the alleyways is a cost borne by the HOA, and the Purchaser shall have no obligation or liability with respect to the maintenance of the alleyways.

**14. ROADS and UTILITIES:** Purchaser shall pay any building permit fees associated with the construction of each home, including water meter fees that will be paid at the time of building permit application or issuance ("Purchaser Fees"). Except for the Purchaser Fees, Seller accepts SOLE responsibility for all other municipal and/or utilities provider's (public or private) fees associated with the development and as required by the municipality for final plat approval, and FULL acceptance of all roads and all utilities. If, other than the Purchaser Fees, Purchaser is burdened with any costs for said providers' acceptance, Purchaser shall have the right to seek payment of the fees from the Seller. This clause shall survive the Agreement for one year regardless of the number lots purchased in this Agreement, so long as the Purchaser has purchased at least ONE lot.

**15. CLOSING COSTS.** Seller shall pay the State of Alabama deed transfer tax. Purchaser shall pay all other closing costs except for Seller's legal fees. Purchaser and Seller shall mutually agree upon the closing attorney required herein.

**16. SUCCESSORS AND ASSIGNS:** The provisions of this Agreement shall be binding upon and shall insure to the benefit of Purchaser, Seller, and their respective heirs, executors, administrators, successors, assigns and the legal representatives of their estates.

**17. EXECUTION OF ALL NECESSARY PAPERS:** Purchaser and Seller at the time of closing shall execute all other papers and documents that may become necessary to close this transaction including, but not limited to a closing statement, certificate of non-foreign status, corporate and/or partnership resolutions and transfer tax declaration.

**18. CLOSING DATE:** On or before the latter of forty-five (45) days after the expiration of the Due Diligence Period or the satisfaction of the Closing Conditions in Section 13 of the Agreement.

**19. COMMISSION:** Both Seller and Purchaser warrant and represent that no real estate commissions are due and payable in association with this transaction.

**20. MARKETING:** After Binding Agreement Date, Seller shall grant permission to Purchaser the right to actively market said lots as a new home community with homes for sale with such actions as signs, websites, promotions and the like.

4

**21. CONFIDENTIALITY:** Seller and Purchaser both agree to keep all terms and party names associated with this Agreement completely confidential to any third party not named in this Agreement or directly associated as a financing institution directly involved in the financing of this specific Agreement. Default of these terms by the Seller shall result in a full refund of earnest money. Additionally, all costs associated with due diligence, construction costs, signs and marketing expenses, shall be reimbursed to Purchaser by the Seller. Default of the terms by the Purchaser shall result in the full forfeiture of Earnest Money regardless of the Closing of said property being consummated.

**22. TIME OF ESSENCE.** Time is of the essence does apply in this Agreement.

**23. ENTIRE AGREEMENT.** This Agreement constitutes the entire Agreement of the parties hereto and no representation, inducement, promises, or agreements oral or written, between the parties not embodied herein shall be of any force and/ or effect. Should a specific section of this Agreement become unenforceable, all other sections shall not be affected.

This offer is presented to the Seller for acceptance for Five (5) Business Days and shall be automatically withdrawn unless otherwise accepted.

**ACCEPTANCE.**
This Agreement is accepted this _2ⁿᵈ_ day of ~~April~~ 2024.

IN WITNESS WHEREOF, the undersigned have hereunto set their hands and affixed their seals this day of 2024.

As to Purchaser:                                    As to Seller(s):

_____                    _____

By Valor Communities, LLC
Scott DeBoard
President

_____                    _____
                                                                    Seller Signature

Date: _____                         Date: _____

5

Exhibit A
Record Plat Map
Colonial Traditions, Phase 1
2057839, Slides A, B, & C

